GILMER, J.,
on the re-hearing. This case has been re-argued with much earnestness and ability on both sides, and I have re-considered the question involved with the care and anxiety which its novelty and importance seem to demand, aided by the light thrown upon it by the last argument. I confess that many difficulties have been suggested by the counsel for the appellees, in carrying into effect the construction put on the statute *'by the minority of the Court; but most, if not all, of them have been raised by supposing extreme cases that may -never occur, and none has been shewn in the case now to be decided, and none in a case in all its circumstances like it; for if such a case were supposed, nothing could be gained in the argument by the illustration.
The appellants’ counsel, by way of illustrating his view of the statute, supposed a case of this sort: that a man who had precisely the same number of children, the same property, as the testator in this case, and who had made to his living children precisely the same advancements, had died intestate, and a posthumous child had been born, as in this case; the law providing that the posthumous child of the man who dies testate shall have the same portion of his father’s estate as if he had died intestate ; yet, by the construction placed on the statute by the appellees, the posthumous child of the testate father could, in no way, by no possibility, get the same portion as the child of the intestate father — so that part of the statute is made wholly inoperative and unmeaning. It is said that advancements are no part of the father’s estate — -but that, if true, and if an answer to the argument, is an answer in one view only, and that is, in case the advanced children claim, and in case of intestacy. Suppose, in case of intestacy, the advanced children do not claim — what portion of the father’s estate, then, does the posthumous child take? All that is left by his father. No one will deny that this is the father’s estate. But here no advancements are brought in at all; there is no question, no dispute as to that being the father’s estate, which he did not give away in his life-time, or dispose of in any way, but died seized and possessed of; no one can deny that in this event, that is, where the advanced children of the intestate father do not come into hotchpot, the posthumous child of the testate father does not get the same portion of his estate, as the posthumous child of the intestate father. Suppose they do choose to bring in their advancements; it is equally plain, he will not get *the same share in that case; so that, in no case that can occur, will he get the same share, and is not, then,' this important part of the statute utterly unmeaning?
I understand the rule in construing statutes to be, that all their parts shall be taken together, and that each part shall have its proper meaning and effect; but by tlie construction contended for by the appellees, not only is a part of the statute disregarded, but the most material and essential part— that part which gives the right and confers the benefit, is to be disregarded, because it is suggested, that there may be difficulties in working out the details — it is to be emasculated, to make it work easy.
If the legislature had intended what the appellees contend for, the first part of the statute would have been wholly unnecessary, and instead of mentioning the father’s estate, it would only have been necessary to provide, that the devisees and legatees should, by contribution, raise for the posthumous child a proportionable part of the property devised and bequeathed to them by the will of their father. If the object was, as the appellees’ counsel contends, to limit the posthumous child, in all cases, to a provision out of the property devised and bequeathed; whence the necessity of mentioning a case of intestacy, when, as already attempted to be shewn, the law of intestacy can in no event apply, according to the construction contended for by the appellees?
The first question, and the most important question in this case, is, what is the posthumous child to have? not, how shall that portion be raised? Let the portion first be ascertained, and then let the means of raising it be looked to; and let both be done according to the statute, if possible; but if that cannot be done, then it would seem better to modify and vary from, the form, than from the substance. I confess, however, that, in this case, I have not seen any necessity for either.
In a case of testacy, if the advanced children claim no part of the devises and bequests, then the posthumous *child would get all, and that is exactly what he would get in case of intestacy, if the advanced children did not come into hotchpot.
If, in a case of testacy, the advanced children claim their devises and bequests, then it would only be necessary to ascertain, by an account, what the posthumous child would have been entitled to in case of intestacy, if the advanced children claimed their share of the intestate’s estate, and require this to be made up by the devisees, and legatees, whether by literally and technically bringing their advancements into hotchpot or not, I think is immaterial. By this construction of the statute, every part has full force and effect, and no injustice, so far as I can see, will be done to any; and until it can be shewn that the posthumous child, by this construction, gets more of the father’s estate than he would have got in case he had died intestate, then he has not got more than the law allows him.
A liberal or a narrow construction should be given to a statute, as may be necessary *598 to carry out the legislative intent, and to effect the purposes of justice; but, in this case, the narrow construction put upon the words “father’s estate,” is calculated to defeat both these objects. ■
I am at a loss to see for what purpose, such a construction is put upon those words in this case. It has not been argued, even, that it is necessary for the purposes of justice, and to produce equality among the children, but it has been contended, that it is necessary to carry out the intention of the Legislature.
It Is only necessary to push the argument one step further, to deprive the posthumous child of everything — he is to have such a portion “of the father’s estate,” &c. ; his father is dead; he gave away a portion of his estate in his life-time, and delivered possession of the personalty, and conveyed by deed title to the realty, to the donees; before-his death he made and published his -last.,will and testament, in solemn form, disposing of all the residue of .his estate, real and personal; now if a literal ^'construction is to be placed on the words “fatner’s estate,” it will be readily seen that he can have no estate; he is-dead, and all his property is vested in others, so that the posthumous child can •get nothing. Q. EJ. D.
-How absurd would this be! and why? Because it defeats the plain legislative intention, by a literal and narrow construction. The property devised and bequeathed by -the will, is no.more the father’s estate after- his death, than the property given to his children as advancements, after it is delivered to them.
. Under the circumstances of this case, differing (as I do) from a majority of the Court, I cannot be very confident of the - correctness of my conclusions on the construction of the statute; but I am confident, that i-t is the most just construction; and I am equally confident that many instances can.be shewn, in which the Court of Appeals has given a more liberal construction to statutes, than is contended for by the -appellants in this case, to prevent injustice from, being done.
Such has been the crudeness and redundancy of our legislation, that statute upon statute has been passed, from year to year, either in ignorance or in disregard of the existing statutes on the same subject, until it became necessary, that the best legal talents .of the State, should be employed for years to bring the chaotic mass into some form; and this state of things, has forced upon .the judiciary, the necessity of apply- 1 ing the principles of .common sense and justice, in their construction, which often could no.t be well reconciled with the language of the statute. Our reported cases, both civil and criminal, abound with such instances, familiar to us all. This discretion is absolutely necessary for the purposes of justice; and, so long as it is confined within the bounds of a sound legal discretion,- there can be no objection to its exercise. If I have departed from the mere letter of the statute in this case, it has been for the purpose of carrying out what I believe to be its true spirit and meaning, and to effect the great purposes of ^justice. When these are clear, I shall follow them, over whatever doubts and ambiguities their light may lead me.